IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FANNIE MAE**, <br><br> Plaintiff, <br><br> v. <br><br> **PF HILLSIDE MANOR, LP,** <br><br> Defendant. | CIVIL ACTION <br><br> Case No.: |

## COMPLAINT IN MORTGAGE FORECLOSURE

Plaintiff Fannie Mae ("Plaintiff"), through its undersigned counsel, commences this action in mortgage foreclosure against PF Hillside Manor, LP, a Pennsylvania limited partnership ("Defendant" or "Borrower"), and in support hereof, avers as follows:

### INTRODUCTION

1. This is an action to foreclose a mortgage secured by real property commonly known as: Hillside Manor, 1127 Ward Street, Chester, Pennsylvania 19013 (the "Property"). The Property is a multifamily apartment building in Delaware County, Pennsylvania.

### PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Fannie Mae is a corporation organized and existing under the laws of the United States. Fannie Mae maintains its principal office in Washington, D.C., and is a citizen of the District of Columbia for purposes of jurisdiction and venue. 12 U.S.C. § 1717(a)(2)(B).

3. Defendant is a Pennsylvania limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania, having an address at 47 High Street, Lakewood, NJ 08701 and a registered office in the Commonwealth of Pennsylvania at 50 North 4th Street, Reading, PA 19601. The general partner of Defendant is PF Hillside Management,

LLC ("Hillside Management") a Pennsylvania limited liability company with a registered office in the Commonwealth of Pennsylvania at 50 North 4th Street, Reading, PA 19601. The managing member of Hillside Management is Oron Zarum, an individual and citizen of the State of New Jersey.

4. The limited partners of Defendant are Phillies Holding LLC; Parness Hillside LLC; MC Hillside LLC; PF Hillside Manor Realty LLC; Levy Hillside LLC; and PureChesterLLC (collectively, the "Limited Partners"). Through information and belief, PureChesterLLC is the manager of Phillies Holding LLC; Parness Hillside LLC; MC Hillside LLC; PF Hillside Manor Realty LLC; and Levy Hillside LLC. Through information and belief, Oron Zarum is the managing member of the Limited Partners. Through information and belief, none of the Limited Partners are citizens of the District of Columbia. As a result, through information and belief, the partners of Defendant are not citizens of the District of Columbia. Therefore, upon information and belief, Defendant is not a citizen of the District of Columbia and Plaintiff and Defendant are diverse of citizenship.

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 and the action is between citizens of different states.

6. Venue exists in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) because the real property that is the subject of this action is situated in this district. Moreover, pursuant to Section 15.01 of the Loan Agreement (as defined below) Defendant consented to jurisdiction and venue in this Court.

## FACTS

**A.  Background**

7. On September 9, 2020, Arbor Commercial Funding I, LLC, a New York limited liability company ("Original Lender"), loaned $13,000,000 (the "Loan") to Defendant

pursuant to that certain Multifamily Loan and Security Agreement (Non-Recourse) (the "Loan Agreement") and related Loan Documents (as defined herein). A true and correct copy of the Loan Agreement is attached hereto as **Exhibit 1** and incorporated by reference herein.

8. The Loan is evidenced by a Multifamily Note (the "Note"), dated September 9, 2020. A true and correct copy of the Note is attached hereto as **Exhibit 2** and incorporated by reference herein.

9. The Note is secured by that certain Open-End Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Mortgage") granted by Defendant to Original Lender, dated September 9, 2020, and made effective as of September 9, 2020. That Mortgage was recorded on October 19, 2020, with the Delaware County Recorder of Deeds, Delaware County, Pennsylvania (the "Recorder's Office") at Instrument Number 2020058747, and encumbers the Property, as more particularly described therein (the "Mortgaged Property"). A true and correct copy of the Mortgage is attached hereto as **Exhibit 3** and incorporated by reference herein.

10. Oron Zarum ("Zarum" or the "Guarantor" and, together with Borrower, the "Obligors"), an individual, executed and delivered to Original Lender that certain Guaranty of Non-Recourse Obligations (the "Guaranty"), dated September 9, 2020, pursuant to which Guarantor guaranteed all amounts owed to Lender pursuant to the Loan Agreement, including all of Original Lender's fees and expenses incurred by Original Lender in enforcing its rights under the Guaranty. A true and correct copy of the Guaranty is attached hereto as **Exhibit 4** and incorporated by reference herein.

11. The Note is further secured by the following:

    a. UCC-1 Financing Statements duly filed with the Commonwealth of

Pennsylvania on September 10, 2020, at Instrument Number 2020091100135 (the "Financing Statement").  A true and correct copy of the Financing Statement is attached hereto as **Exhibit 5** and incorporated by reference herein.

        b.    An Environmental Indemnity Agreement (the "Indemnity Agreement") from Defendant to Original Lender, dated September 9, 2020.  A true and correct copy of the Indemnity Agreement is attached hereto as **Exhibit 6** and incorporated by reference herein.

        12.    The Note, the Mortgage, the Guaranty, and all such other documents executed by Defendant and Guarantor to secure the Note are referred collectively to as the "Loan Documents."[1]

        13.    Original Lender assigned Plaintiff all right, title, and interest in and to the Mortgage pursuant to the Assignment of Security Interest (the "Mortgage Assignment"), recorded with the Recorder's Office at Instrument Number 2020062604 on November 6, 2020.  A true and correct copy of the Mortgage Assignment is attached hereto as **Exhibit 7** and incorporated by reference herein.

        14.    Original Lender assigned Plaintiff all right, title, and interest in and to the Loan Documents, pursuant to Assignment of Collateral Agreements and Other Loan Documents ("Loan Documents Assignment"), dated September 9, 2020.  A true and correct copy of the Loan Document Assignment is attached hereto as **Exhibit 8** and incorporated by reference herein.

        15.    The Mortgaged Property encumbered by the Mortgage is described more particularly in **Exhibit 9** attached hereto and incorporated by reference herein.

---

[1] Capitalized terms used but not defined in this complaint have the meanings given in the Loan Documents, as applicable.

16. The Mortgage also constitutes a security agreement with respect to the personal property, *see* Mortgage, Section 2, and, because the Mortgage was recorded on October 19, 2020, constitutes a "fixture filing" within the meaning of section 9-334 of the Uniform Commercial Code as adopted in Pennsylvania. *See* 13 Pa. C.S. § 9334.

17. The personal property in which Defendant granted the Lender a security interest is identified in the Mortgage. *See* Mortgage at pp. 4-5.

**B.      Defendant's Defaults under the Loan Documents**

   *(i)      Discovery of Obligors' Defaults*

18. The Note and Mortgage are in default due to, and without waiving any other defaults that may have occurred, Borrower's failure to (i) timely pay all amounts due under the Loan Documents by failing to (a) pay the February and March 2023 Monthly Debt Service Payments and the amounts set forth in the Notice of Default (as defined below), (b) make the first payment of additional funds to be deposited into the Monthly Replacement Reserve Deposit, and (c) maintain properly the Replacement Reserve Account or Repairs Escrow Account; (ii) maintain the Mortgaged Property pursuant to the terms of the Loan Documents, including Article 6 of the Loan Agreement; and (iii) comply with its covenant to not permit liens against the Mortgaged Property.

19. On December 14, 2022, a Property Condition Assessment (the "Property Condition Assessment") was conducted on the Mortgaged Property, whereby certain deficiencies were noted and identified. A true and correct copy of the Property Condition Assessment is attached hereto as **Exhibit 10** and incorporated by reference herein.

20. By letter dated January 18, 2023, (the "Demand Letter"), Original Lender, who is now servicer of the Loan ("Servicer"), notified Defendant that certain Events of Default would occur if Defendant did not satisfy the demands described therein and below. A true and

correct copy of the Demand Letter is attached hereto as **Exhibit 11** and incorporated by reference herein.

21. Section 14.01(a) of the Loan Agreement provides that an automatic Event of Default occurs upon "any failure by Borrower to pay or deposit when due any amount required by the Note, [the] Loan Agreement or any other Loan Document." Borrower failed to timely pay all amounts due under the Loan Documents on at least four separate occurrences:

    a. Borrower failed to pay the February and March 2023 Monthly Debt Service Payments, thereby constituting an automatic Event of Default.

    b. Borrower failed to pay the amounts set forth in the Notice of Default (as defined below).

    c. Pursuant to the Demand Letter and in accordance with section 13.02(a)(4) of the Loan Agreement, Servicer notified Borrower that the Monthly Replacement Reserve Deposit was being increased by $1,966.00 per month, and such increased deposit amount would commence with the payment due on March 1, 2023. Borrower failed to pay the increased Monthly Replacement Reserve Deposit on March 1, 2023, thereby constituting an automatic Event of Default.

    d. Pursuant to the Demand Letter and in accordance with section 13.02(a)(4) of the Loan Agreement, Servicer demanded that Borrower deposit amounts sufficient to replenish the Replacement Reserve Account or the Repairs Escrow Account by February 17, 2023. Borrower failed to do so, thereby constituting an automatic Event of Default.

22. Section 14.01(a) of the Loan Agreement provides that an automatic Event of Default occurs upon "any failure by Borrower to complete any Repair related to fire, life, or

safety issues in accordance with the terms of [the] Loan Agreement within the Completion Period (or such other date set forth on the Required Repair Schedule or otherwise required by Lender in writing for such Repair)." Pursuant to the Demand Letter, Servicer demanded that Borrower undertake repairs and replacements identified therein and in the Property Condition Assessment, related to life and safety,[2] by February 18, 2023. Borrower failed to do so, thereby constituting an automatic Event of Default.

        23.    Section 14.01(b)(4) of the Loan Agreement provides that an Event of Default occurs upon "any failure by Borrower to perform any obligation under [the] Loan Agreement or any Loan Document that is subject to a specified written notice and cure period, which failure continues beyond such specified written notice and cure period." Pursuant to section 11.02(a) of the Loan Agreement, Borrower is not permitted to "grant, creation, or existence of any Lien, whether voluntary, involuntary, or by operation of law, on all or any portion of the Mortgaged Property" unless permitted under the Loan Documents. Pursuant to the Demand Letter, Servicer notified Borrower that it discovered that Borrower failed to pay water and sewer charges to the city and county sewer authority resulting in at least one lien against the Property, and demanded that Borrower provide proof of payment by February 18, 2023. Borrower failed to do so, thereby constituting an Event of Default.[3]

---

[2] Pursuant to section 6.02(b)(4)(d), Borrower covenanted to "make, construct, install, diligently perform, and complete all Replacements, Repairs, Restoration, and any other work permitted under the Loan Documents . . . within all timeframes required by Lender, and Borrower acknowledges that it shall be an Event of Default if Borrower abandons or ceases work on any Repair at any time prior to the completion of the Repairs for a period of longer than twenty (20) days." Pursuant to the Demand Letter, Servicer demanded that Borrower undertake additional repairs and replacements by July 18, 2023, and January, 2024. Plaintiff reserves all rights to assert additional Events of Default if Borrower does not timely complete such repairs.

[3] Plaintiff has discovered that additional liens have been placed on the Property as a result of Borrower's failure to pay water and sewer charges to the city and county sewer authority. Additional liens have been placed on the Property by Frank Prudente, Stivale Law Offices PLLC, and Jesus Guevara.

24. An Event of Default under the Loan Agreement is an Event of Default under the Note and Mortgage. *See generally* Note, Section 3; Mortgage, Sections 1, 3.

25. Accordingly, Borrower is in default under the Loan Agreement, the Note, and the Mortgage because Borrower has failed to (i) make the required payments under the Loan Documents, (ii) maintain the Mortgaged Property pursuant to the terms of the Loan Documents; and (iii) comply with its covenant to not permit liens against the Mortgaged Property.

26. Because of the Event of Default, Plaintiff has the right to foreclose on the Mortgage and to obtain an order directing the sale of the Mortgaged Property to satisfy the indebtedness it is owed. *See* Loan Agreement, Section 14.02(a); Mortgage, Section 5.

27. By notice dated March 22, 2023, ("Notice of Default"), Plaintiff notified Defendant that certain Events of Default had occurred and were occurring. Plaintiff also accelerated all outstanding principal due under the Loan Documents and demanded in full the payment of all then accelerated principal plus accrued and unpaid interest and Plaintiff's fees and costs, including attorney's fees. Plaintiff reserved all rights and remedies available to it under the Loan Documents, at law, or in equity. A true and correct copy of the Notice of Default is attached hereto as **Exhibit 12** and incorporated by reference herein.

*(ii)   Plaintiff's Remedies Upon Default*

28. As a result of Plaintiff's acceleration of the outstanding principal balance due under the Note, the entire unpaid balance of the principal, interest, and all other sums are immediately due and payable. As a consequence of these above-stated breaches of the Loan Documents, the entire indebtedness (the "Indebtedness") owed by Defendant and Guarantor under the Note and Guaranty is due.

29. Plaintiff may recover, *inter alia*, its out-of-pocket expenses incurred as part

of protecting its interest in the Property.  *See* Mortgage, Section 4.

30. The Mortgage provides the following remedies (among others) to Plaintiff:

   a. Plaintiff may foreclose on the Mortgaged Property.  Mortgage, Section 5(a).

   b. Plaintiff may seek the appointment of a receiver as a matter of right, without consideration of the value of the Mortgaged Property, **without the necessity of giving prior notice (oral or written) to Borrower**.  Mortgage, Section 3(e) (emphasis added).

31. Plaintiff has performed all of the conditions and statutory requirements precedent to the commencement of this action.

32. Act 6, 41 P.S. § 101 *et seq.*, does not apply to the Mortgage because the original principal amount of the indebtedness secured by the Mortgage is greater than $50,000.00.

33. Act 91, 35 P.S. § 1680.401 *et seq.*, does not apply to the Mortgage because the Real Property covered by the Mortgage is not the primary residence of the mortgagor.

34. Notwithstanding the Notice of Default, Borrower has failed to pay in full the amounts owed at maturity or otherwise cure the ongoing Events of Default.

35. Plaintiff brings this action in mortgage foreclosure without prejudice or waiver of any other rights or remedies existing under the Loan Documents, or any other agreements, or which may be available at law or in equity.

**C. Plaintiff's Damages**

36. As of May 1, 2023, there is due and owing on the Loan without defense, deduction, offset, recoupment, or counterclaim the total amount of $13,199,876.02, consisting of (i) the unpaid principal amount under the Note of $12,936,404.58, and (ii) the aggregate accrued, and unpaid interest under the Note of $263,471.44.  Interest continues to accrue at the *per diem*

rate of $2,554.94 (beginning May 2, 2023), and pursuant to the Loan Documents, fees, costs, expenses, and other charges continue to accrue, which are part of Plaintiff's total damages claim.

### COUNT ONE – MORTGAGE FORECLOSURE

37. Paragraphs 1 through 36 of this Complaint are incorporated herein by reference.

38. Borrower executed the Note, which is secured by the Mortgage, in favor of Plaintiff.

39. Borrower has defaulted on its obligations under the Note, the Mortgage, the Loan Agreement and the other Loan Documents.

40. Plaintiff is authorized by the Mortgage and by Pennsylvania law to foreclose the Mortgage in the event of a default by Borrower.

41. There is due and owing on the Loan the sum of $13,199,876.02 as of May 1, 2023, together with accruing default interest, fees, costs, expenses, and other charges under the Loan Documents.

WHEREFORE, Fannie Mae respectfully requests that this Honorable Court (i) enter judgment in favor of Plaintiff and against Defendant for the full unpaid principal in the amount of $12,936,404.58 and the unpaid interest as of May 1, 2023, in the amount of $263,471.44, which continues to accrue in the per diem amount of $2,554.94, plus its attorneys' fees and costs and interest accruing thereon at the Default Rate; (ii) enter judgment *in rem* for foreclosure and sale of the Mortgaged Property which is the subject of the Mortgage; and (iii) grant such other and further relief to which Plaintiff may be entitled.

Dated: May 26, 2023                                  Respectfully submitted,

                                                         REED SMITH LLP

                                      By:   */s/ Victoria A. Russell*
                                                   Victoria A. Russell
                                                   1717 Arch Street, Suite 3100
                                                   Philadelphia, PA 19103
                                                   Telephone: (215) 851-8100
                                                   Email: vrussell@reedsmith.com

                                                   - and -

                                                   Jared S. Roach (*pro hac vice* to be filed)
                                                   225 Fifth Avenue, Suite 1200
                                                   Pittsburgh, PA 15222
                                                   Telephone: (412) 288-3131
                                                   Email: jroach@reedsmith.com

                                                   *Attorneys for Fannie Mae*